WILLIAM W. GUNBY AND J. E. GUNBY v. PILOT FREIGHT CARRIERS, INC.,
A NORTH CAROLINA CORPORATION

No. 8521DC1271

(Filed 5 August 1986)

1. **Assignments § 1— assignment of right to receive C.O.D. payment—valid**
    There was a valid assignment of the right to receive a C.O.D. payment
    where there was a writing which purported to be an assignment to plaintiffs
    from Enclosures, Inc., of any rights, liens, interests, receivables, and holdings
    between Enclosures, Inc., and Pilot Freight Lines, specifically including all
    rights relating to a building framework shipment originating from Moreland,
    Georgia. N.C.G.S. § 25-1-201(36).

2. **Carriers § 11.1— C.O.D.—failure to collect—summary judgment for plaintiffs**
    The trial court correctly granted summary judgment in favor of plaintiffs
    in an action between a shipper and a carrier for failure to collect for a C.O.D.
    delivery where the waybill showed that the goods were to be delivered C.O.D.
    and that $11,039 was to be collected by certified check; a carrier cannot dis-
    pute the C.O.D. amount by arguing that the market value of the goods was
    much less than the C.O.D. amount because of defects in the goods; and a par-
    tial payment by the consignee to the shipper discharged the carrier's liability
    only to the extent of the partial payment.

APPEAL by defendant from *Keiger, Judge.* Judgment entered
16 August 1985 in District Court, FORSYTH County. Heard in the
Court of Appeals 14 March 1986.

*Pfefferkorn, Pishko & Elliot by David C. Pishko for plaintiff
appellees.*

*Bell, Davis & Pitt by Joseph T. Carruthers for defendant ap-
pellant.*

COZORT, Judge.

Plaintiffs brought this action to recover over $10,000 in
C.O.D. charges from a carrier who failed to collect the C.O.D.

charges from the recipient of the merchandise. Plaintiffs claimed entitlement to the C.O.D. charges as assignee of the shipper of the merchandise. After discovery was complete, the trial court granted summary judgment for plaintiffs. Defendant appeals, alleging (1) there was no valid assignment from the shipper to plaintiffs; (2) there was no evidence of a "trip lease" agreement imposing any obligations on the defendant; (3) there was no evidence that defendant breached any duty to plaintiffs; and (4) there was a genuine issue of fact as to whether there was an accord and satisfaction reached on the amount due. We affirm the entry of summary judgment for plaintiffs.

On 12 August 1982, Enclosures, Inc., shipped building materials from Moreland, Georgia, to Kinderhook, New York, on a "collect-on-delivery" (C.O.D.) basis. Defendant, through its Transall division, delivered the building materials to Capitol Valley Contractors in Kinderhook, New York, and billed Enclosures, Inc., for the delivery of the merchandise but never collected any C.O.D. charges. Defendant's Waybill No. 426-03566 showed that the goods were to be delivered C.O.D. and $11,039 was to be collected. The defendant did not "trip lease" the delivery to K & H Trucking as alleged by plaintiffs in their complaint. Defendant asserted several defenses to plaintiffs' claim for C.O.D. charges: (1) that the assignment from Enclosures, Inc., to plaintiffs was invalid; (2) that the merchandise delivered to Capitol Valley Contractors was defective and plaintiffs were not entitled to be paid the full $11,039; (3) that plaintiffs have been paid in full by the consignees, Capitol Valley Contractors, for the value of the goods; and, (4) that plaintiffs owe defendant $5,017 for unpaid shipping charges.

The defendant contends the trial court erred by granting summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c).

[1] We first consider whether there was a valid assignment to the plaintiffs. The record contains a writing which purports to be an assignment from Enclosures, Inc., to the plaintiffs. To have a valid assignment there must be "an assignor, an assignee, and a

thing assigned." *Morton v. Thornton*, 259 N.C. 697, 699, 131 S.E. 2d 378, 380 (1963); *Piedmont Cattle Credit Co. v. Hall*, 34 N.C. App. 478, 238 S.E. 2d 625 (1977). According to the written assignment, the assignor was Enclosures, Inc., by its President and Owner William Gunby; the assignee was J. E. Gunby and William W. Gunby; and the thing assigned was "all rights, liens, interest, receivables, and holdings" which exist or existed between Enclosures, Inc. and Pilot Freight Lines, specifically all rights relating to building framework sold to and shipment originating from Moreland, Georgia. The term "all rights" includes the contractual right of Enclosures, Inc., to recieve its C.O.D. payment from the defendant. *See* G.S. 25-1-201(36). An assignee of a contractual right is a real party in interest and may maintain an action. *Morton v. Thornton, supra.* The authenticity of this assignment was stipulated to by the parties. As a matter of law, this was a valid assignment. The defendant's first contention is overruled.

[2]   Defendant next contends that there was no evidence supporting plaintiffs' allegations of a "trip lease" agreement between defendant and K & H Trucking and no evidence establishing that defendant breached any contract or duty to Enclosures, Inc. It is immaterial whether an agreement to "trip lease" existed because the defendant's Waybill establishes the existence of an agreement between defendant and Enclosures, Inc., for the C.O.D. shipment of the building materials.

Waybill No. 426-03566 indicates the shipper as Enclosures, Inc., Moreland, Georgia, and the consignee as Capitol Valley Contractors, Kinderhook, New York. This Waybill showed that the goods were to be delivered C.O.D. and that $11,039 was to be collected by certified check only. A C.O.D. collection fee was listed on the Waybill. A Waybill is "a document prepared by the carrier of a shipment of goods that contains details of the shipment, route and charges." *Webster's New Collegiate Dictionary*, 1334 (9th ed. 1985); *accord, Black's Law Dictionary*, 1429 (rev. 5th ed. 1979). Defendant's Waybill clearly establishes as a matter of law the existence of a written agreement where the parties agreed that delivery would be C.O.D., and the amount to be collected would be $11,039, by certified check.

The liability of a carrier for delivering goods sent C.O.D. is set out in 27 A.L.R. 3d 1320, *et seq.*:

Under a c.o.d. shipment, the carrier acts in two capacities, as bailee to transport the goods, which is a duty imposed by law upon common carriers, and as agent to collect the price of the goods, which is not a duty imposed by law, but is a matter of private contract, express or implied, which the carrier may enter into or refuse at its option.

[W]here the carrier breaches its duty as collection agent under a c.o.d. contract, the generally applied rule is that the carrier will be liable, like any other collection agent for whatever could have been collected if the duty had been fulfilled . . . .

*See Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F. 2d 1370 (9th Cir. 1978); *Rolla Produce Co. v. American Ry. Express Co.*, 205 Mo. App. 646, 226 S.W. 582 (1920).

In *Cermetek*, the Ninth Circuit Court of Appeals thoroughly analyzed the measure of damages which arises from the breach of a C.O.D. contract. The court held that damages for breach of a C.O.D. contract is the amount the carrier was obligated to collect under the C.O.D. agreement. The court stated:

The seller generally utilizes a C.O.D. contract because he either does not trust the buyer or does not intend to advance credit. If the seller trusted the buyer he could easily enter into any number of credit transactions. . . . However, when utilizing the C.O.D. method, the seller clearly indicates he wants liquid assets, not a contract claim against a distant buyer who may be insolvent, litigious, dishonest, or all three. A buyer is not bound to accept the goods and pay the C.O.D. amount, but when he does (perhaps only because he is desperate for the goods and can get them no other way) that ends the transaction. The seller has the full value he placed on the goods. If there is any dispute as to value or defects, that is another, separate issue and the buyer must sue or take other action against the seller, as provided in the Uniform Commercial Code . . . .

*Id.* at 1379.

The carrier cannot dispute the C.O.D. amount by arguing that the market value of the goods is much less than the C.O.D. amount because of alleged defects in the goods. We hold that un-

der a C.O.D. contract the amount of liability incurred by a carrier, who delivers goods to the consignee without collecting the C.O.D. amount, is the C.O.D. amount, and not the value of the goods.

In this case, the consignee, Capitol Valley Contractors, rendered a partial payment to Enclosures, Inc., of $4,150.86. Defendant argues that by accepting this payment, the plaintiff ratified defendant's failure to collect the C.O.D. charges and that defendant is relieved from its obligation to pay the charges. We disagree. As a general rule where the consignee renders a cash payment for the full C.O.D. charges to the shipper, the carrier will not be held liable for wrongful delivery. *Rolla Produce Co. v. American Ry. Exp. Co., supra, Barnhart v. Henderson,* 147 Neb. 689, 24 N.W. 2d 854 (1947); *see Griggs v. York-Shipley, Inc.,* 229 N.C. 572, 50 S.E. 2d 914 (1948). But where the shipper receives partial payment, the carrier's liability is discharged only to the extent of the partial payment. The trial court correctly reduced the carrier's liability by the amount of payment received by the shipper from Capitol Valley Contractors. We affirm the trial court's granting of summary judgment in favor of the plaintiffs.

Affirmed.

Judges BECTON and PHILLIPS concur.