### THE FIRST NATIONAL BANK OF SALISBURY v. P. W. MICHAEL.

*Negotiable Instruments—Bonds—Promissory Notes.*

1. A written instrument whereby a party promises to pay the party therein named a sum certain at a time specified therein, is a promissory note in this State, although it be under seal.

2. A bond payable to the order of the obligee, which recites the particular consideration for which it was given, as for the purchase money for a tract of land, is a negotiable instrument, and a purchaser for value, before maturity and without notice, takes it discharged of any equities between the original parties to it.

3. To render a note unnegotiable, it must show on its face that the promise to pay is conditional, or renders the amount to be paid uncertain.

4. The defendant executed his bond to the order of the payee, which bond recited that it was given for the purchase money for a tract of land, and the payee endorsed it to the plaintiff before maturity. After the endorsement the obligor paid the amount due to the payee, who misapplied it; and *It was held,* that the bond was a negotiable instrument, and plaintiff being an endorsee without notice and before maturity, was entitled to recover.

5. If, in such case, the bond had not been endorsed by the payee, and had been paid and discharged by the obligor before its delivery to the plaintiff, he could not have recovered.

(*Goodloe* v. *Taylor*, 3 Hawks, 458; *Elliott* v. *Southerman*, 2 Dev. & Bat., 358; *Blackmer* v. *Phillips*, 67 N. C., 340; cited and approved. *Miller* v. *Tharel*, 75 N. C., 148; *Howard* v. *Kimball*, 65 N. C., 175; distinguished and approved).

CIVIL ACTION, tried before *Boykin, Judge,* and a jury, at November Term, 1886, of ROWAN Superior Court.

The plaintiff alleges in its complaint, that it is the owner of a single bond, duly endorsed by the obligee therein, whereof the following is a copy:

"$750.00.    Six months after date, I promise to pay Chas. L. Heitman, or order, seven hundred and fifty dollars, for value received, with interest from date at eight per cent. per annum, payable annually until paid.    It being the balance of the purchase money for one hundred and forty-three acres of land on Reedy Creek, in Davidson county, North Carolina, sold this day by Charles L. Heitman to me, and for which I hold a bond for title from said Charles L. Heitman.    Witness my hand and seal, this 26th day of October, 1885."

(Signed)        P. W. MICHAEL, (Seal.)
Endorsed, CHAS. L. HEITMAN.

It is further alleged, that no part of the money due upon this bond has been paid, and a judgment is demanded for the same.

The following is a copy of the material part of the answer of the defendant:

"VII. For further answer, and as a defence to this action, defendant avers that on the 26th October, 1885, he executed the note referred to and mentioned in the complaint to C. L. Heitman, being the balance of purchase money for a tract of land. That on the 30th day of December, 1885, defendant paid to the said C. L. Heitman the principal and interest specified in said note, and took his receipt for the same on the following day, which receipt defendant will produce on the trial. That upon the payment of the said note, one Alfred Wood, administrator of John Mosely, executed a deed for the land to this defendant. That when the administrator of Mosely sold the land, Heitman became the purchaser, and assigned his bid to defendant, who thereupon executed his note to Heitman, and upon the payment of the note, and at the request of the said Heitman, the said Alfred Wood, administrator as aforesaid, executed the deed for the land to the defendant."

Upon issues submitted to them, the jury found by their verdict, that the bond, a copy of which is set forth above, was deposited by Charles L. Heitman with the plaintiff as collateral security for a debt due from him to the plaintiff—that the defendant had never paid the same to the plaintiff, and that he paid the same to the said Heitman on the 31st day of December, 1885.

The following are the parts of the case settled on appeal, material to be set forth here:

"Plaintiff introduced as a witness, J. H. Foust, cashier of the bank, who testified that on the 28th of October, 1885, one Charles L. Heitman discounted his note for $750.00 with plaintiff, and on the same date endorsed the Michael note to plaintiff as a collateral to secure his note. That the Heitman note was discounted on the strength of the collateral; and said Michael note has been in the constant and

uninterrupted possession of plaintiff from October 25, 1885, until suit was brought thereon. The note executed by Michael was then introduced.

The defendant was next introduced as a witness, who testified that he paid the amount of the note in full to Heitman on the 31st of December, 1885, and took his receipt for the same; that Heitman told him the note had been misplaced The receipt was as follows: 'Received of Philip W. Michael, full payment of a note for seven hundred and fifty dollars given by him to me on October 25, 1885, to secure the balance of the purchase money for 143 acres of land, known as the Purcell tract, which note is lost or misplaced, and which is to be delivered to said Philip W. Michael when found. This 31st December, 1885.' (Signed by Chas. L. Heitman.)

Plaintiff insisted that the note executed by Michael was a negotiable instrument, and that the bank was a *bona fide* holder for a valuable consideration; that it was acquired in the usual course of business; that no equity existed between the defendant Michael and Heitman until December 31st, 1885, while plaintiff became the owner of, and Heitman parted with his interest in the note on October 28th, 1885. Plaintiff further insisted the answer of defendant admitted that Heitman had conveyed to him the land for which the note was given.

Defendant contended that the note was not a negotiable instrument, and that the plaintiff took the same with notice of defendant's equity, since the note expressed upon its face that it was given for land for which the defendant had a bond for title from Heitman; that sufficient appeared upon the face of the note to put the plaintiff upon inquiry, and that consequently the plaintiff is affected with knowledge of all that the inquiry would have disclosed.

His Honor was of opinion with plaintiff, and gave judgment accordingly, and the defendant appealed."

*Mr. W. C. Blackmer* filed a brief for the plaintiff.
*Mr. D. G. Fowle,* for the defendants.

MERRIMON, J., (after stating the facts). The statute (*The Code,* §41,) makes bonds and notes under seal. for money, whether made payable to order or not, assignable over in like manner as inland bills of exchange are by the custom of merchants, and the person to whom the same shall be assigned or endorsed, may maintain an action against the maker and endorser upon the same, as in case of inland bills of exchange.

. A promissory note in this State is a written engagement under seal or not, wherein the maker stipulates and promises to pay a person therein named, absolutely and unconditionally, a certain sum of money, at a time therein specified.

The bond in question has all these requisites and qualities. In it there is a certain obligor and obligee, and there is an express promise to pay absolutely and unconditionally a certain sum of money at a time therein specified. It was therefore, negotiable. It was endorsed, and the plaintiff became the *bona fide* holder of it before it matured, and before the defendant obligor paid the obligee therein named the money which he intended should discharge it. In this latter respect, this case is essentially different from that of *Miller v. Tharell,* 75 N. C., 148. In that case, the note was paid—discharged—before the payee sold it, and it was not endorsed. The Court intimates strongly that if it had been endorsed, the plaintiff might have recovered, notwithstanding the payment.

The defendant contends that the reference in the body of the bond to the consideration for which it was given, rendered it non-negotiable. We do not think so. This inference does not imply a condition or limitation, affecting the promise to pay the sum of money specified; it simply recites the particular consideration, and is intended to mark the

bond as of a particular transaction between the original parties to it, for their convenience. This view is strengthened by the fact that the bond is expressly in terms made payable to "order," thus indicating the purpose of the parties to make it negotiable. The mere fact that the particular consideration of the note is mentioned in it, and that it possibly might involve or give rise to equities between the parties to it, cannot prevent its negotiability by endorsement. To have this effect, it must appear from the reference to it in the note, that it qualifies the promise to pay the sum of money specified, and renders it conditional, or the amount to be paid uncertain. A different rule would much embarrass business transactions involving negotiable notes and bonds, and tend to impair the freedom and confidence that ought to prevail and be upheld in the course of general business and trade. This view was taken by the Supreme Court of Tennessee in *Ryland* v. *Brown*, 2 Head., 270; which case is in material respects like the present one. See also *Goodloe* v. *Taylor*, 3 Hawks, 458; *Elliott* v. *Southerman*, 2 D. & B., 358; Story on Prom. Notes, §26.

The case of *Howard* v. *Kimball*, 65 N. C., 175; cited for the defendant, is unlike this one. Reference is made in the note in that case, to the "Rocky Swamp tract of land," as the consideration for which it was given, and the Court held that such reference was notice of any equity in favor of the maker, but it did not hold that the note was non-negotiable —indeed, it recognized its negotiability by endorsement. This decision cannot help the defendant. The bond, as we have seen, was negotiable and was endorsed to the plaintiff before it was due. This gave it the legal and equitable title to it, certainly as to the relief now sought by the defendant. *Blackmer* v. *Phillips*, 67 N. C., 340.

The reference to the land as the consideration of the bond could not, in any just and reasonable view, put the plaintiff on notice as to the attempted payment of it by the defendant

to the obligee, in its absence. It was not bound to presume or suppose that the defendant would attempt to thus pay the bond without taking adequate indemnity against it. He was bound to know its negotiable nature, and that it was not due.

It was his own laches thus to attempt to pay the note—not that of the plaintiff. It was the misfortune of the defendant that he dealt with and confided in a man who seems to have been faithless and dishonest.

There is no error, and the judgment must be affirmed.

No error.                                              Affirmed.